**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

JUN 2 8 2024

ARTHUR JOHNSTON
BY _____ DEPUTY

**MISSISSIPPI ASSOCIATION OF HEALTH PLANS, INC.**          **PLAINTIFF**

**V.**          CAUSE NO. 3:24-cv-379-HTW-LFI

**MIKE CHANEY, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF
INSURANCE OF MISSISSIPPI**          **DEFENDANT**

---

### COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE RELIEF

---

Pursuant to 42 U.S.C. § 1983, the Mississippi Association of Health Plans, Inc. ("MAHP"), files this Complaint seeking declaratory and injunctive relief regarding the unprecedented and unconstitutional health insurance reimbursement and coverage mandates imposed by House Bill 1489, enacted by the Mississippi Legislature during its 2024 Regular Legislative Session ("House Bill 1489" or "the Bill") ("Exhibit A"), and signed into law by the Mississippi Governor on May 2, 2024. In support of its complaint, MAHP states the following:

#### PARTIES AND STANDING

1.      Plaintiff Mississippi Association of Health Plans, Inc., is a Mississippi non-profit corporation in good standing and licensed to do business in Mississippi, having its principal place of business at 200 North Congress Street, Suite 401, Jackson, MS 39201. MAHP's membership includes health insurers licensed by the Mississippi Insurance Department to sell health insurance who are issuers and/or administrators of health benefit plans as defined in Miss. Code Ann. § 83-63-3 and/or accident and sickness insurance policies as defined in Miss. Code Ann. § 83-9-1. MAHP's mission is to champion high-quality, affordable and accessible healthcare and to work

1

collaboratively with and for its members to address common challenges in the health benefits space. MAHP's objectives on behalf of its members include coordinating state legislative activities pertaining to health benefits, working with state and federal agencies which regulate health benefits entities to promote and foster appropriate development and operation of health benefit programs, and to protect and strengthen the role of the health benefits industry in national healthcare.

2.       MAHP has associational standing to challenge House Bill 1489 because (1) some of MAHP's members have individual standing to sue in their own right; (2) challenging the Bill is germane to MAHP's purpose; and (3) MAHP members' individual participation is unnecessary in this purely legal challenge.

3.       Defendant Commissioner Mike Chaney, in his official capacity only (the "Commissioner"), is the Commissioner of Insurance of the State of Mississippi and the "chief officer" of the Mississippi Insurance Department. Miss. Code Ann. § 83-1-3. The Mississippi Insurance Department is a separate and distinct department of the State of Mississippi charged with the execution of all laws relative to all insurance and all insurance companies, corporations, associations or orders. Miss. Code Ann. § 83-1-1. House Bill 1489 provides it "shall be codified as new sections in [the Mississippi Insurance Code,] Title 83, Chapter 9, Mississippi Code of 1972." Although House Bill 1489 is not a rule or regulation established by the Commissioner, as the chief officer of the Mississippi Insurance Department charged with executing Mississippi insurance laws, the Commissioner, in his official capacity only, is the appropriate defendant in this challenge to the constitutionality of the Bill. The Commissioner may be served with process at 1001 Woolfolk State Office Building, 501 N. West Street, Jackson, MS 39201.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). This Court has authority to grant legal and equitable relief under 42 U.S.C. § 1983, injunctive relief under 28 U.S.C. § 1651, and declaratory relief under 28 U.S.C. § 2201(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## NOTICE TO ATTORNEY GENERAL

6.      Pursuant to Federal Rule of Civil Procedure 5.1, notice of this civil action challenging the constitutionality of a duly-enacted state law will be provided by certified mail to the Attorney General of the State of Mississippi.

## INTRODUCTION AND BACKGROUND FACTS

7.      MAHP files this action seeking a declaration that House Bill 1489 violates the protections guaranteed to its members by the Contract Clause of Article I, Section 10 of the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

8.      Health benefit plans and health insurance policies routinely provide coverage for medically necessary ambulance services for the transportation of sick or injured insureds to the hospital to receive medical treatment, and insureds routinely benefit from rates negotiated between insurers and providers through lower premium costs.  House Bill 1489, however, mandates a potentially massive expansion of coverage for "ambulance services" that are so unclear in the Bill's text so as to leave health insurers guessing what may be required of them, and for potentially non-emergency ambulance transportation to non-hospital "alternative destination" facilities which are so vaguely defined as to potentially include facilities incapable of providing such services.  For ambulance service providers who have entered into provider agreements with health insurers (i.e.,

in-network providers), the Bill purports to require reimbursement at the network rates paid for advanced life support medical services regardless if such level of care is required or even provided. In addition to mandating this coverage, the Bill provides a financial windfall for out-of-network ambulance service providers who do not have special rates by contract or ordinance with a county, municipality or special purpose district or authority, requiring they be reimbursed at whatever rate the ambulance service provider decides to charge – mandating reimbursement at 325% of that allowed by Medicare *or the provider's billed charges, whichever is <u>greater</u>*. Such a mandate virtually guarantees ambulance service providers will cancel and/or refuse to enter into network or local government rate agreements, resulting in increased costs of healthcare—costs that will be borne by insureds in Mississippi.

9.      MAHP requests the Court to declare House Bill 1489 is unlawful and/or void under the United States Constitution for the following reasons:

a.      Effective July 1, 2024, House Bill 1489 mandates a "minimum allowable reimbursement rate" for out-of-network ambulance service providers (up to whatever amount providers wish to bill) without regard to the existing out of network allowables provided in existing health benefit plans and insurance contracts, in violation of the Contract Clause prohibition against "impairing the Obligation of Contracts." U.S. Const. Art. I, § 10 and

b.      The statutory terms in Section 1 of House Bill 1489 mandating coverage for "ambulance services"–including transport to non-hospital "alternative destination" facilities, lack sufficient definiteness to give due notice of what is required to be covered by health benefit plans and to avoid arbitrary and discriminatory enforcement –violate the

4

Due Process Clause of the Fourteenth Amendment to the United States Constitution because they are impermissibly vague.

## MISSISSIPPI HOUSE BILL 1489

10.    House Bill 1489 contains two substantive sections, each imposing separate mandates on health benefit plans and health insurance policies related to coverage for "ambulance service[s]" or reimbursement of charges imposed by ambulance service providers. Section 1 of the Bill enacts the "Mississippi Triage, Treat and Transport to Alternative Destination Act," which mandates health benefit plans to provide coverage for ambulance services, including non-transportation related ambulance services that may involve no medical services or care at all, and transportation of enrollees *not* to hospital emergency departments, but to an unlimited number of vaguely defined lower-acuity facilities that provide medical services. These facilities include urgent care centers, medical clinics and doctor's offices of the enrollee's choosing, among other places (the "Coverage Mandate").   Section 2 requires out-of-network ambulance providers—despite not having a provider contract with the insurer and the benefits inuring from such a contract, such as lower healthcare costs—to be paid at rates unilaterally set by the ambulance service—*no matter how much that amount is*—so long as the ambulance service has no contract with the governing authorities of the county, municipality, or special purpose district in which the service originated (the "Reimbursement Mandate").

## HB 1489's Coverage Mandate

11.    The Coverage Mandate is set out in Section 1(3) of the Bill as follows:

Coverage for ambulance service to assess, triage and transport an enrollee to an alternative destination or treat in place. On and after July 1, 2024, any health benefit plan shall provide coverage for:

(a) An ambulance service to:
(i)Treat or assess an enrollee in place; or

(ii)Triage or triage and transport an enrollee to an alternative destination; or

(b) An encounter between an ambulance service and enrollee that results without transport of the enrollee.

Though Section 1(3) states the Coverage Mandate commences on an after July 1, 2024, the Bill was amended prior to passage to add Section 1(6), providing:

This section shall apply to all contracts described in this section that are entered into or renewed on or after July 1, 2024.

12.     Section 1(2)(c) of the Bill defines "ambulance service provider" as follows:

"Ambulance service provider" means a person or entity that provides ambulance transportation and emergency medical services to a patient for which a permit is required under Section 41-59-9.

13.     Section 1(2)(b) of the Bill defines "alternative destination" as follows:

"Alternative destination" means a lower-acuity facility that provides medical services, including, without limitation:
    1. A federally qualified health center;
    2. An urgent care center;
    3. A physician's office or medical clinic, as chosen by the patient; and
    4. A behavioral or mental health care facility, including, without limitation, a crisis stabilization unit and a diversion center.

"Alternative destination" does not include a:
    1. Critical access hospital;
    2. Dialysis center;
    3. Hospital;
    4. Private residence; or
    5. Skilled nursing facility.

14.     Section 1(4)(a) identifies how the Coverage Mandate is triggered, providing:

The coverage required under this section:

(a)     Is subject to the initiation of ambulance service treatment as a result of a 911 call that is documented in the records of the ambulance service;

A "911 call" is defined as: a communication made on behalf of an enrollee indicating that the enrollee may need emergency medical services.  House Bill 1489 § 1(2)(a).

15.    Section 1(5) of the Bill requires the reimbursement rate equal the ambulance reimbursement rate for advance life support services, providing:

> The reimbursement rate for an ambulance service provider whose operators assess, triage, treat or transport an enrollee to an alternative destination shall be not less than the minimum allowable reimbursement for advanced life support rate with mileage to the scene.

16.    For the reasons stated below, Section 1 of House Bill 1489 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it is impermissibly vague and, therefore, void.

### HB 1489's Reimbursement Mandate

17.    The Reimbursement Mandate is set out in Section 2 of the Bill, providing:

> (1)(a) The minimum allowable reimbursement rate under any policy of accident and sickness insurance as defined by Section 83-9-1 to an out-of-network ambulance service provider for all covered services shall be the rates contracted between an ambulance service provider and a county, municipality or special purpose district or authority, or otherwise approved or established by ordinance or regulation enacted by any such county, municipality or special purpose district or authority in which the covered healthcare services originated.
>
> (b)    In the absence of rates provided in subsection (a), the minimum allowable reimbursement rate to an out-of-network ambulance service provider shall be the greater of:
>
> > (i)    Three hundred twenty-five percent (325%) of the reimbursement allowed by Medicare for the respective services originating in the respective geographic area; or
> >
> > (ii)    The ambulance service provider's billed charges.

18.    For the reasons stated below, Section 2 of House Bill 1489 is unlawful because it impairs existing health benefit plans and insurance contracts in violation of the Contract Clause of the United States Constitution.

## REQUEST FOR DECLARATORY RELIEF

19.    MAHP incorporates by reference all allegations contained in Paragraphs 1 through 18.

20.    Pursuant to 28 U.S.C. § 2201(a), this Court is empowered to "declare the rights and other legal relations of any interested party seeking such declaration." MAHP requests the Court to declare, pursuant to 28 U.S.C. § 2201(a), that:

        a.    The Reimbursement Mandate of House Bill 1489, Section 2 is unlawful and unenforceable because it violates the Contract Clause prohibition against "impairing the Obligation of Contracts." U.S. Const. Art. I, § 10; and

        b.    The Coverage Mandate of House Bill 1489, Section 1 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it is impermissibly vague and, therefore, void.

### COUNT I
### SECTION 2 OF HOUSE BILL 1489 VIOLATES THE CONTRACT CLAUSE
### (U.S. Const. Art. I, § 10)

21.    MAHP incorporates by reference all allegations contained in Paragraphs 1 through 20.

22.    The United States Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts," U.S. Const. Art. I, § 10.

23.    The Reimbursement Mandate in Section 2 of House Bill 1489unreasonably and substantially impairs existing contracts between MAHP's members and their subscribers/insureds.

24.    The Reimbursement Mandate requires insurance policies to provide a minimum allowable reimbursement rate for *out-of-network* ambulance providers equal to the rate set by contract or ordinance with a county, municipality or special purpose district or authority, if any.

If none exists, Section 2 mandates the minimum allowable reimbursement rate for out of network ambulance providers shall be the ***greater*** of: (1) 325% of the reimbursement allowed by Medicare; or (2) the ambulance service provider's billed charges.  In other words, if no contract or ordinance by a local government establishes rates—which, upon information and belief, is virtually always the case—the out of network ambulance service provider may charge whatever amount it wants, and Section 2 mandates the allowable reimbursement rate be set at that billed rate.

25.     Health benefit plans and health insurance policies are typically issued on a calendar year basis (referred to as a "plan year"), and the provisions of health benefit plans, including benefits structure, and premium rates must be approved by the Commissioner months before plans may be issued.  House Bill 1489 makes the Section 2 Reimbursement Mandate effective on July 1, 2024, and thus imposes this requirement on *existing* health benefit plans and insurance policy contracts.  *See* House Bill 1489 § 4 ("This act shall take effect and be in force from and after July 1, 2024.").  Thus, health benefit plans and insurance policies existing and in effect on July 1, 2024, are affected.

26.     Health benefit plans and insurance policies routinely reimburse based on an allowable amount established by the plan, and anticipated reimbursements to providers based on the allowable affect premium pricing to insureds.  Mandating a minimum allowable reimbursement rate up to any amount an out of network ambulance service provider wishes to charge imposes a significant change in coverage obligations and cost increase on current health benefit plans and health insurance policies that unreasonably and substantially impairs bargained for terms.

27.     House Bill 1489 operates as a substantial impairment to MAHP's members' health benefit plans and health insurance policies.  MAHP's members entered into and/or continued such plans and policies with its subscribers/insureds with the expectation and understanding that it

9

would provide healthcare coverage provided in the plans at the allowable reimbursement rates provided for by the plans. Likewise, their subscribers/insureds purchased such plans and policies with the expectation and understanding their patient-responsibility obligations (such as co-insurance) would be based on those allowable reimbursement rates. The Bill seeks to unilaterally expand the obligations (and costs) of both Plaintiff's members and their subscribers/insureds under existing health benefit plans and insurance policies without their consent.

28.     Moreover, the financial windfall for out-of-network ambulance service providers by requiring a minimum allowable reimbursement rate up to the billed charges – no matter how much – is a state-sanctioned policy that incentivizes ambulance service providers not to enter into network provider agreements and to terminate existing network provider agreements with insurers. In this regard, the Reimbursement Mandate destroys health insurers' ability to negotiate in-network provider agreements with ambulance service providers to manage healthcare costs and premiums for their insureds.

29.     There is no significant and legitimate justification for or public purpose served by the Reimbursement Mandate. Rather than providing a benefit to the public, the Reimbursement Mandate will only benefit special interests, including ambulance service providers, who will have total control of determining healthcare costs for ambulance services under a law that requires health insurers to pay it regardless of amount, resulting in an increase in cost of health insurance to insured Mississippians. Even if there was a significant and legitimate public purpose at issue related to reimbursement for ambulance service providers, mandating health plans to pay whatever out of network ambulance service providers wish to charge was not reasonably necessary to achieve that purpose, and indeed risks future burdening of healthcare costs by encouraging future special interest favoritism.

30.     Accordingly, the Court should declare that Section 2 of House Bill 1489 violates the Contract Clause of Article 1, Section 10 of the U.S. Constitution.

**COUNT II**
**SECTION 1 OF HOUSE BILL 1489 VIOLATES, AND IS VOID FOR VAGUENESS UNDER, THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

31.     MAHP incorporates by reference all allegations contained in Paragraphs 1 through 30.

32.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution dictates that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   A corporation is a "person" within the meaning of the Due Process Clause. *See First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 780 n. 15 (1978).

33.     Section 1 of House Bill 1489 violates the Due Process Clause because it is void for vagueness.  The "void-for-vagueness" doctrine, embodied in the Due Process Clause, requires invalidation of laws that are impermissibly vague.  Section 1 of House Bill 1489 commands compliance in terms so vague and indefinite as really to be no rule or standard at all, and many of its terms are substantially incomprehensible. It also fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits and authorizes, and encourages arbitrary and discriminatory enforcement.

34.     The Coverage Mandate requires health benefit plans to provide coverage for ambulance services to "treat or assess an enrollee in place" or to "triage or triage and transport an enrollee to an *alternative destination*," and for any "*encounter* between an ambulance service and enrollee that results *without transport* of the enrollee." House Bill 1489 § 1(3) (emphasis added).

35.     The Bill defines the term "alternative destination" as "a lower-acuity facility that provides medical services, *including, without limitation*: (1) A federally qualified health center;

(2) An urgent care center; (3) A physician's office or medical clinic, as chosen by the patient; and (4) A behavioral or mental health care facility, including, without limitation, a crisis stabilization unit and a diversion center", but excludes five types of facilities from this definition: critical access hospitals, dialysis centers, hospitals, private residences, and skilled nursing facilities.

36. The definition of "alternative destination" renders the Bill unconstitutionally vague. The Bill's use of "including but not limited to" specific examples is seemingly endless in scope to include non-emergency facilities, yet other provisions require a heightened degree of emergency medical service to trigger coverage. Specifically, to constitute an "ambulance service provider" both "ambulance transportation" _and_ "emergency medical services" have to be performed, and covered ambulance services must be reimbursed at the advanced life support rate plus mileage. HB 1489 § 1(2)(c), (5). Yet the Bill fails to define or establish any parameters for what level of "lower-acuity" "medical services" a provider or facility is capable of providing causes the provider or facility to qualify as an "alternative destination" for covered "ambulance services." As written, it is substantially unclear what constitutes an "alternative destination" and if an "alternative destination" includes medical providers who do not provide any degree of emergency medical services, such as a dermatologist, pharmacist, chiropractor, and the like.

37. The Bill also requires coverage for services that are vague and undefined, including coverage for "[a]n encounter between an ambulance service and enrollee that results without transport of the enrollee." The term "encounter" is undefined in the Bill, and is generally defined as "to meet as an adversary or enemy; to engage in conflict with; to come upon face-to-face; to come upon unexpectedly." Merriam–Webster Dictionary (online ed.), _available at_ http://www.merriam-webster.com (last visited June 20, 2024) (defining "encounter"). Thus, it is substantially unclear what level of service an ambulance service provider must actually provide

to an enrollee, if any at all, to trigger coverage of an ambulance service provider's claim at advanced life support rates with mileage.

38.    To qualify for coverage under the Coverage Mandate, ambulance services must be initiated by a "911 call." House Bill 1489 § 1(4)(a). However, the Bill defines a "911 call" not as a call to a county's or municipality's E-911 service reached by dialing "911," as required by the Mississippi Department of Health's emergency management services regulations[1] and some, if not all, Mississippi county ordinances related to emergency services,[2] but as any "communication made on behalf of an enrollee indicating that the enrollee may need emergency medical services." House Bill 1489 § 1(2)(a). It is substantially unclear whether coverage for ambulance services and transportation at the advanced life support rates would be triggered when a caller contacts an ambulance service directly, not through a governmental E-911 service, which will encourage calls for service that are not truly emergency in nature.

39.    Additionally and alternatively, the use of the term "contracts" in Section 1(6) is unconstitutionally vague as to which "contracts" the Coverage Mandate is intended to apply. Section 1(6) provides Section 1 "shall apply to all contracts described in this section that are

---

[1] Miss. Dept. Health Emergency Medical Services Rule 1.1.7 provides "911 is the universal emergency phone number for public access of Emergency Medical Services in the State. Ambulance service providers shall only advertise 911 as their emergency number [unless] a municipality or county has not implemented 911." Miss. Admin. Code Title 15, Part 12, Subpart 31.

[2] For example, Section 4 of the Rankin County, Mississippi, Ordinance for Ambulance Services provides:

        4.1  The Emergency Operations Center (E-911) in Brandon, Mississippi operates a 911 emergency call processing system and receives emergency calls to said system directly from the general public and as referred from certain other emergency call processing centers in Rankin County, Mississippi. The Emergency Operations Center (E-911) establishes the call's classification, determines the Patient's location, determines the need for First Responder Service and, if appropriate, alerts the First Responder, dispatches the appropriate ambulance and, if appropriate, delivers pre-arrival instructions, all according to policies and guidelines established by the Emergency Operations Center (E-911).

        4.2  It shall be unlawful for any Ambulance Service Provider or anyone else to publish or advertise any phone number other than 911 for the purpose of soliciting requests for its services.

https://www2.rankincounty.org/ordinances/ambulance-service.html (*last visited June 27, 2024*).

entered into or renewed on or after July 1, 2024." The Coverage Mandate in Section 1 purportedly only applies to terms of coverage contained in health benefit plans. Health benefit plans containing the terms of coverage are typically issued on a plan year basis, and new terms included in health benefit plans are approved by the Commissioner months before they may be issued. If a new enrollee enrolls in a health benefit plan on July 1, 2024, the approved coverage terms are those in effect during the current 2024 plan year. The vagueness of this section makes it substantially unclear if Section 1(6) imposes the Coverage Mandate on existing plan year terms, and thus is void for vagueness. If it does, Section 1(6) constitutes an unlawful impairment to Plaintiff's members existing health benefit plans in violation of the Contract Clause.

40. These unintelligible provisions create no standard at all and/or cause House Bill 1489, Section 1 to be substantially incomprehensible. The vague language will create uncertainty for MAHP's member plans, leaving plans without direction as to what claims may require coverage and what claims may not. Furthermore, the significant lack of clarity will leave the interpretation and enforcement of these provisions to the sole discretion of the Commissioner, who "is charged with execution of all laws relative to insurance companies," or to courts deciding whether a denied claim is required to be covered as a matter of law. Moreover, the Commissioner may, in certain circumstances, impose penalties amounting to misdemeanors and fines for failure to comply with state law. Section 1 does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and increases the risk of arbitrary application and enforcement. Thus, these provisions are impermissibly vague in all of their applications.

41. Accordingly, the Court should declare that Section 1 of House Bill 1489 violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## COUNT III
## EQUITABLE RELIEF

42. MAHP incorporates by reference all allegations contained in Paragraphs 1 through 41.

43. House Bill 1489 as a whole and the individual challenged provisions of it violate the United States Constitution and deprive Plaintiff and its members of enforceable federal rights. Federal courts have the power to enjoin unlawful actions by state officials. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

44. Plaintiff's members are licensed insurance providers regulated by the Mississippi Insurance Department, and Mississippi law establishes broad powers of the Commissioner to regulate their actions and insurance services they provide to Mississippi residents. The Commissioner is empowered to deny approval of policy terms he finds inconsistent with state law, and to deny approval of premium rates he determines to be unreasonable for coverage provided. *See* Miss. Code Ann. §§ 83-9-4,303; MID Bulletin 2011-7. Moreover, the Commissioner is empowered to examine and investigate licensees to determine if he believes they are in compliance with state insurance laws, and to impose sanctions on them to enforce state insurance laws. *See, e.g.*, Miss. Code Ann. §§ 83-1-51, 83-5-209.

45. The Commissioner's broad regulatory authority is accompanied by broad powers to enforce state insurance laws. For example, in enforcing the state insurance laws and regulations, the Commissioner is empowered "to order [an insurer] to take any action the commissioner considers necessary and appropriate to cure [] violations [of any law or regulation]," and "may initiate any [regulatory] proceedings or actions as provided by law." Miss. Code Ann. § 83-5-209(3), (6)(c). If the Commissioner believes an insurer "is engaging in any improper or unauthorized activity in violation of any insurance law, [he] may issue a cease and desist order

with or without notice and a prior hearing . . . directing them to cease and desist from further activities." Failure to comply with the cease and desist order constitutes a misdemeanor, and may be punished by a fine of $5,000 per violation. Miss. Code Ann. § 83-1-51(2). In certain situations, the Commissioner may subject an insurer to "administrative supervision by the commissioner" if in his discretion he determines an insurer has failed to comply with applicable provisions of the insurance code. Miss. Code Ann. § 83-1-155.

46.     Plaintiff is substantially likely to prevail on the merits of its claims that House Bill 1489 violates the United States Constitution and, therefore, is void. Moreover, Plaintiff's members are at a substantial risk of suffering irreparable harm through regulatory enforcement and penalties if the Commissioner is not enjoined from enforcing House Bill 1489 through his considerable regulatory authority.

47.     This Court can and should exercise its equitable power to enter an injunction prohibiting the Commissioner from enforcing House Bill 1489, and enjoining the Commissioner from taking any actions to enforce the Bill, including without limitation:

a. Refusing to approve health benefit plans submitted to him or his office that do not provide coverage for ambulance services under Section 1(3) of the Bill;

b. Refusing to approve health benefit plans submitted to him or his office that do not include or incorporate minimum allowable reimbursement rates for out-of-network ambulance service providers as set out in Section 2 of the Bill;

c. Instituting any enforcement action or proceeding permitted under Mississippi law against health insurers on account of alleged non-compliance with the Bill;

d. Imposing any sanction or fine permitted under Mississippi law on or against health insurers on account of alleged non-compliance with the Bill; and/or

e. Exercising authority, if any, to retroactively find a health benefit plan or insurance policy currently in effect for plan year 2024 to be in violation of Mississippi law for alleged failure to incorporate minimum allowable reimbursement rates for out-of-network ambulance service providers as set out in Section 2 of the Bill.

16

### DEMAND FOR RELIEF

For the foregoing reasons, Plaintiff requests the Court to enter an order and judgment:

a.  Declaring that Section 2 of House Bill 1489 unlawfully impairs obligations of contracts in violation of the Contract Clause of Article 1, Section 10 of the U.S. Constitution;

b.  Declaring that Section 1 of House Bill 1489 is void for vagueness under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; and

c.  Enjoining Defendant and his agents, employees, and all persons acting under his direction or control from taking any action to enforce the Bill or the challenged portions of the Bill;

d.  Entering a final judgment in favor of the Plaintiff;

e.  Awarding Plaintiff its attorneys' fees and costs incurred in bringing this action, including attorneys' fees and costs under 42 U.S.C. § 1988(b) for successful 42 U.S.C. § 1983 claims against state officials; and

f.  Awarding Plaintiff such other relief as the Court deems just and proper.


Dated:  June 28, 2024.

Respectfully Submitted,

**MISSISSIPPI ASSOCIATION OF HEALTH PLANS, INC**


By: _____
James A. McCullough, II
One of Their Attorneys

Of Counsel:

**BRUNINI, GRANTHAM, GROWER & HEWES, PLLC**
James A. McCullough II (MSB No. 10175)
jmccullough@brunini.com
L. Kyle Williams (MSB No. 105182)
kwilliams@brunini.com
Post Office Drawer 119
Jackson, Mississippi 39205
The Pinnacle Building
190 East Capitol Street, Suite 100
Jackson, Mississippi 39201
Telephone: (601) 948-3101
Telecopier: (601) 960-6902

MISSISSIPPI LEGISLATURE

By:  Representatives Hobgood-Wilkes, Barton,
Arnold, Hines, Mickens, Carpenter

REGULAR SESSION 2024

To:  Insurance

**EXHIBIT**
**A**

HOUSE BILL NO. 1489
(As Sent to Governor)

1    AN ACT TO BE KNOWN AS THE MISSISSIPPI TRIAGE, TREAT AND
2  TRANSPORT TO ALTERNATIVE DESTINATION ACT; TO PROVIDE THAT HEALTH
3  BENEFIT PLANS SHALL PROVIDE COVERAGE FOR AN AMBULANCE SERVICE TO
4  TREAT OR ASSESS AN ENROLLEE IN PLACE, OR TRIAGE OR TRIAGE AND
5  TRANSPORT AN ENROLLEE TO AN ALTERATIVE DESTINATION, OR AN
6  ENCOUNTER BETWEEN AN AMBULANCE SERVICE AND ENROLLEE THAT RESULTS
7  WITHOUT TRANSPORT OF THE ENROLLEE UNDER THE PLAN; TO PROVIDE THAT
8  THE COVERAGE REQUIRED UNDER THIS SECTION IS SUBJECT TO THE
9  INITIATION OF AMBULANCE SERVICE TREATMENT AS A RESULT OF A 911
10  CALL THAT IS DOCUMENTED IN THE RECORDS OF THE AMBULANCE SERVICE
11  AND SUBJECT TO DEDUCTIBLES OR CO-PAYMENT REQUIREMENTS OF THE PLAN,
12  AND DOES NOT DIMINISH OR LIMIT BENEFITS OTHERWISE ALLOWABLE UNDER
13  THE PLAN; TO PROVIDE THAT THE REIMBURSEMENT RATE FOR AN AMBULANCE
14  SERVICE PROVIDER WHOSE OPERATORS ASSESS, TRIAGE, TREAT OR
15  TRANSPORT AN ENROLLEE TO AN ALTERNATIVE DESTINATION SHALL BE NOT
16  LESS THAN THE MINIMUM ALLOWABLE REIMBURSEMENT FOR ADVANCED LIFE
17  SUPPORT RATE WITH MILEAGE TO THE SCENE; TO PROVIDE THAT THE
18  MINIMUM ALLOWABLE REIMBURSEMENT RATE UNDER ANY POLICY OF ACCIDENT
19  AND SICKNESS INSURANCE TO AN OUT-OF-NETWORK AMBULANCE SERVICE
20  PROVIDER SHALL BE RATES CONTRACTED BETWEEN AN AMBULANCE SERVICE
21  PROVIDER AND A COUNTY, MUNICIPALITY OR SPECIAL PURPOSE DISTRICT OR
22  AUTHORITY, OR OTHERWISE APPROVED OR ESTABLISHED BY ORDINANCE OR
23  REGULATION ENACTED BY ANY SUCH COUNTY, MUNICIPALITY OR SPECIAL
24  PURPOSE DISTRICT OR AUTHORITY; TO PROVIDE THAT IN THE ABSENCE OF
25  SUCH RATES, THE MINIMUM ALLOWABLE REIMBURSEMENT RATE SHALL BE THE
26  GREATER OF THREE HUNDRED TWENTY-FIVE PERCENT OF THE REIMBURSEMENT
27  ALLOWED BY MEDICARE FOR SERVICES ORIGINATING IN RURAL AREAS OR THE
28  AMBULANCE SERVICE PROVIDER'S BILLED CHARGES; TO PROVIDE A DATE OF
29  REPEAL ON SUCH PROVISIONS; AND FOR RELATED PURPOSES.

30    BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

31     **SECTION 1.**   (1)   This section shall be known and may be cited

32 as the "Mississippi Triage, Treat and Transport to Alternative

33 Destination Act."

34     (2)   **Definitions.**   As used in this section, the following

35 terms shall be defined as provided in this subsection:

36         (a)   "911 call" means a communication made on behalf of

37 an enrollee indicating that the enrollee may need emergency

38 medical services;

39         (b)   (i)   "Alternative destination" means a lower-acuity

40 facility that provides medical services, including, without

41 limitation:

42             1.   A federally qualified health center;

43             2.   An urgent care center;

44             3.   A physician's office or medical clinic, as

45 chosen by the patient; and

46             4.   A behavioral or mental health care

47 facility, including, without limitation, a crisis stabilization

48 unit and a diversion center.

49         (ii)   "Alternative destination" does not include a:

50             1.   Critical access hospital;

51             2.   Dialysis center;

52             3.   Hospital;

53             4.   Private residence; or

54             5.   Skilled nursing facility.

55          (c)  "Ambulance service provider" means a person or
56  entity that provides ambulance transportation and emergency
57  medical services to a patient for which a permit is required under
58  Section 41-59-9;

59          (d)  "Enrollee" means an individual who is covered by
60  any health benefit plan; and

61          (e)  "Health benefit plan" means any such policy as
62  defined by Section 83-63-3.

63      (3)  Coverage for ambulance service to assess, triage and
64  transport an enrollee to an alterative destination or treat in
65  place.  On and after July 1, 2024, any health benefit plan shall
66  provide coverage for:

67          (a)  An ambulance service to:

68              (i)  Treat or assess an enrollee in place; or

69              (ii)  Triage or triage and transport an enrollee to
70  an alterative destination; or

71          (b)  An encounter between an ambulance service and
72  enrollee that results without transport of the enrollee.

73      (4)  The coverage required under this section:

74          (a)  Is subject to the initiation of ambulance service
75  treatment as a result of a 911 call that is documented
76  in the records of the ambulance service;

77          (b)  Is subject to deductibles or co-payment
78  requirements of the health benefit plan;

79       (c)  Does not diminish or limit benefits otherwise

80   allowable under a health benefit plan, even if the billing claims

81   for medical or behavioral health services overlap in time that is

82   billed by the ambulance service provider that is also providing

83   care; and

84       (d)  Is subject to any provisions of the health benefit

85   plan that apply to other services covered by the health benefit

86   plan.

87   (5)  The reimbursement rate for an ambulance service provider

88   whose operators assess, triage, treat or transport an enrollee to

89   an alternative destination shall be not less than the minimum

90   allowable reimbursement for advanced life support rate with

91   mileage to the scene.

92   (6)  This section shall apply to all contracts described in

93   this section that are entered into or renewed on or after July 1,

94   2024.

95   **SECTION 2.**  (1)  (a)  The minimum allowable reimbursement

96   rate under any policy of accident and sickness insurance as

97   defined by Section 83-9-1 to an out-of-network ambulance service

98   provider for all covered services shall be the rates contracted

99   between an ambulance service provider and a county, municipality

100  or special purpose district or authority, or otherwise approved or

101  established by ordinance or regulation enacted by any such county,

102  municipality or special purpose district or authority in which the

103  covered healthcare services originated.

H. B. No. 1489    ║█▌║▌█║▌║█▌║▌█║║▌█║    ~ OFFICIAL ~
24/HR26/R1991SG
PAGE 4 (ENK\KW)

104          (b)   In the absence of rates provided in subsection (a),
105    the minimum allowable reimbursement rate to an out-of-network
106    ambulance service provider shall be the greater of:

107                (i)   Three hundred twenty-five percent (325%) of
108    the reimbursement allowed by Medicare for the respective services
109    originating in the respective geographic area; or

110                (ii)   The ambulance service provider's billed
111    charges.

112          (2)   A payment made under this section shall be considered
113    payment in full for the covered services provided, except for any
114    copayment, coinsurance, deductible and other cost-sharing feature
115    amounts required to be paid by the enrollee.

116          (3)   For purposes of this section, the term "ambulance
117    service provider" means a person or entity that provides ambulance
118    transportation and emergency medical services to a patient for
119    which a permit is required under Section 41-59-9.

120          (4)   This section shall stand repealed on June 30, 2028.

121          **SECTION 3.**   Sections 1 and 2 of this act shall be codified as
122    new sections in Title 83, Chapter 9, Mississippi Code of 1972.

123          **SECTION 4.**   This act shall take effect and be in force from
124    and after July 1, 2024.

H. B. No. 1489
24/HR26/R1991SG
PAGE 5 (ENK\KW)                ~ **OFFICIAL** ~
                        ST:   Ambulance services; provide for payment for
                        treatment in place and provide for minimum
                        reimbursement rate in health insurance policies.